UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No. SA CV 10-01464 DOC (JCGx)                      Date: April 4, 2011

Title: KELLY TURBEVILLE, MICHAEL and AUDRA SCHMIERER, JACQUELYN and SAMUEL COLLETTA, THOMAS and FELICIA MINERVA, RONALD RYAN, and ANTHONY TAYLOR v. JPMORGAN CHASE BANK

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Nancy Boehme | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

| NONE PRESENT | NONE PRESENT |
|---|---|

PROCEEDING (IN CHAMBERS): ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

       Defendant JPMorgan Chase Bank brings the present Motion to Dismiss Plaintiffs' First Amended Complaint in the above-captioned case ("Motion") (Docket 22). The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. After considering the moving, opposing, and replying papers, and for the reasons stated below, the Court GRANTS in part and DENIES in part Defendant's Motion.

       **I.**      **Background**

       In 2008, due to the unprecedented financial crisis, the United States Government provided financial institutions with close to $700 billion under the Troubled Asset Relief Program ("TARP").[1] A

---

[1] A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Additionally, a court may take judicial notice of "'matters of public record' without converting a motion to dismiss

key feature of TARP is the Home Affordable Modification Program ("HAMP"), which allows banks to receive incentive payments for providing mortgage loan modifications to eligible borrowers. Plaintiffs are a group of homeowners ("Plaintiffs") who allege that Defendant JPMorgan Chase Bank ("Defendant") failed to offer them, and others similarly situated, these allegedly required loan modifications.

In October of 2008, Defendant accepted $25 billion in TARP funds. The following year, on July 31, 2009, Defendant signed a Servicer Participation Agreement ("SPA") with the United States Treasury, through its agent, Fannie Mae, agreeing to participate in HAMP as an approved HAMP servicer. As a HAMP servicer, Defendant entered into a written Trial Period Plan Agreement ("Agreement" or "TPP Agreement") with each of the named Plaintiffs for temporary loan modifications with Plaintiffs. According to Plaintiffs, these Agreements require Defendant to extend a formal offer for a permanent loan modification upon a borrower's successful completion of his or her respective Trial Period ("trial" or "program") and continued compliance with the Agreements. Plaintiffs allege that they have complied with all contractual obligations, yet Defendant has breached the TPP Agreements by refusing to extend offers for permanent loan modifications.

On September 28, 2010, Plaintiffs, on behalf of themselves and similarly situated homeowners, filed this purported class action lawsuit. Plaintiffs' original Complaint alleged breach of contract, promissory estoppel, injunctive relief, and violations of the California Consumer Legal Remedies Act. On December 13, 2010, Plaintiffs filed their First Amended Complaint ("FAC"), adding a third-party beneficiary claim to enforce the SPA and violations of the Illinois Consumer Fraud and Deceptive Practices Act, New York Business Law § 349, Nevada Deceptive Trade Practices Act, and the Indiana Deceptive Consumer Sales Act. In response, Defendant filed the instant Motion, contending that deficiencies in the FAC require that Plaintiffs' claims be dismissed for failing to state a claim upon which relief may be granted.

## II.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a

---

into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). Under the incorporation by reference doctrine, courts may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)) (alteration in original). Accordingly, the Court takes judicial notice of the United States' actions mentioned in this section regarding Defendant, TARP, and the Home Affordable Modification Program.

plaintiff's allegations fail to state a claim upon which relief can be granted. Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)). In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id.* at 1949. If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id*. Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id*. at 1950. Determining whether a complaint states a plausible claim for relief will be a context-specific task requiring the court to draw on its judicial experience and common sense. *Id*.

In evaluating a 12(b)(6) motion, review is "limited to the contents of the complaint." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). However, exhibits attached to the complaint, as well as matters of public record, may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment. *See Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Further, a court may consider documents "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "The Court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Id*.

Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### III.    Discussion

Defendant first contends that Plaintiffs' suit contravenes Congress's exclusion of a HAMP private cause of action. Plaintiffs argue, however, that they seek to enforce the TPP Agreements between themselves and Defendant, not HAMP. Consequently, insofar as Plaintiffs seek to enforce their TPP Agreements, the question of whether "HAMP's preclusion reaches plaintiffs' litigation theory is an issue better decided on summary judgment." *Durmic v. J.P. Morgan Chase Bank*, 2010 WL 4825632, n.9 (D. Mass. 2010). The Court proceeds to consider the plausibility of each of Plaintiffs' claims.

####   1.         **Breach of Contract**

Plaintiffs allege that the TPP Agreements constitute valid contracts and that Defendant breached these contracts by failing to provide a permanent loan modification after each of the Plaintiffs complied with all of the trial requirements. In its Motion, Defendant contends that Plaintiffs fail to allege breach of contract under each of their respective state laws because (1) the plain terms of the TPP Agreement contradict Plaintiffs' allegations, (2) the TPP Agreements lack consideration, and (3) the TPP Agreements would be unenforceable agreements to agree.[2]

(1) The Plain Terms of the Agreement

The TPP Agreements provide for a trial period before the HAMP eligible homeowner receives a HAMP loan modification. Plaintiffs allege that the plain terms of the Agreement specify that a HAMP loan modification automatically follows the successful completion of the trial period. Defendant contends that the plain terms of the Agreement contradict Plaintiffs' theory, as the Agreements vest Defendant with the ultimate discretion to deny a HAMP loan modification. Section 1 of the Agreement reads as follows:

> If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, *then the Lender will provide me with a Home Affordable Modification Agreement* ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage . . . I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. This Plan will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature.

FAC, Ex. J, ¶ 1 (emphasis added). Section 2 of the Agreement goes on to state:

> I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement. . . I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents *if the Lender determines that I do not qualify* or if I fail to meet any one of the requirements under this Plan.

*Id*. at 2(G) (emphasis added). Defendant contends that this last phrase plainly states that a

---

[2] Defendant does not move to dismiss the New York Plaintiffs' breach of contract and promissory estoppel claims as they plead a different set of facts – that Defendant did not honor their final loan modification agreement. Defendant's Motion to Dismiss ¶ 8, n. 4.

MINUTES FORM 11 DOC                                           Initials of Deputy Clerk nkb
CIVIL - GEN                                                                Page 4 of 14

permanent loan modification is subject to Defendant's unfettered discretion. The Court is not convinced, however, as the phrase "if the Lender determines that I do not qualify" may be interpreted to mean simply that the Lender has the discretion to assess the homeowner's compliance with the trial period. The terms of the Agreement can be read to suggest that if a homeowner fails to comply, then the Lender may decline to issue a HAMP loan modification because the homeowner no longer qualifies for it, but not that the Lender has discretion to reject homeowners who completed the trial successfully. Indeed, to read Section 2 of the Agreement as giving the Lender arbitrary discretion to refuse to provide a HAMP loan modification on any grounds runs counter to the other statements in Section 1 and Section 2, which reiterate that after the homeowner meets the specified requirements, the Lender will respond by providing a loan modification.

Defendant also contends that any discretion on its part necessarily entails a finding that the TPP Agreements are not contracts. The Court disagrees. If the TPP Agreements are interpreted as vesting Defendant with the discretion to determine compliance with terms of the trial, the TPP Agreements look similar to many other run-of-the-mill contracts. The trial requirements are straightforward. A homeowner must make three specified payments and provide necessary financial documentation. The provision that allows Defendant to verify compliance with these objective requirements does not automatically preclude a finding that the Agreements constitute valid contracts.

Plaintiffs' interpretation of the Agreements is at least plausible. At the Rule 12(b)(6) stage, plausibility is all that is required. Defendant's proffer of an alternative plausible interpretation does not entitle Defendant to a dismissal.

> (2) Lack of Consideration

Defendant next argues that Plaintiffs' breach of contract claim fails because the Plaintiffs fail to plausibly allege consideration. "A contract is supported by an adequate consideration if there is some benefit to the promisor or detriment to the promisee." *S. Cal. Enters. v. D.N. & E. Walter & Co.*, 78 Cal. App. 2d 750, 760 (1947).[3] Specifically, Defendant contends that because Plaintiffs were already obligated to pay their mortgage, the mortgage payments made during the trial cannot constitute consideration for a new agreement to extend a loan modification.

In the FAC, however, Plaintiffs allege that in order to comply with the trial, they had to submit financial documents in addition to other TPP requirements. Plaintiffs previously were not required to submit these documents. Because consideration encompasses any detriment to the promisee, no matter how small, Plaintiffs adequately plead consideration for the TPP Agreement. *See Durmic*, 2010 WL 4825632 at *3 (holding that plaintiffs had adequately pled consideration for the TPP Agreements by

---

[3] The requirements for consideration are the same in Illinois, Nevada, and Indiana. *See Ross v. May Co.*, 880 N.E. 2d 210, 215 (Ill. Ct. App. 2007); *Clark County v. Bonanza No. 1*, 615 P. 2d 939, 944 (Nev. 1980); *Kelly v. Levandoski*, 825 N.E. 2d 850 (Ind. Ct. App. 2005).

fulfilling the requirements because consideration "entails even the slightest trouble or inconvenience.").

       (3) Agreement to Agree

Lastly, Defendant contends that "Plaintiffs fail to aver agreement on essential terms for a permanent modification, such as the principal amount, the monthly payment amount, the applicable interest rate(s), the loan term, or the amount of escrow payments, if any." Defendant's Motion to Dismiss ¶ 13.   Defendant cites case law holding that "if an essential element is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement." *City of Reno v. Silver State Flying Serv., Inc.*, 438 P. 2d 257, 260-1 (Nev. 1968) (quoting *Ablett v. Clauson*, 43 Cal. 2d 280, 284-85 (1954)).[4]  Due to these alleged omissions, Defendant moves to dismiss Plaintiffs' breach of contract claim, arguing that the TPP Agreement is unenforceable as a contract without these terms.

Plaintiffs contest Defendant's characterization of the TPP Agreement's reference to HAMP loan modifications.  According to Plaintiffs,  "the essential terms of the promised [HAMP loan modification] are not open to negotiation or discretionary alteration by either side." Plaintiffs' Motion in Opposition ¶ 10.  Indeed, Supplemental Directive 09-01 to the HAMP states that a homeowner's loan modification is determined by the standardized "Net Present Value" test which calculates the homeowner's monthly mortgage payment based on income. Plaintiffs' Motion in Opposition, Ex. 2 ¶ 5.[5]  The Net Present Value test is accessible to the public online through www.financialstability.gov. *Id*.  The Supplemental Directive 09-01 also states the other required aspects of a HAMP loan modification. *Id*. at 6.  Plaintiffs'

---

[4] The laws in Illinois and Indiana similarly require definite terms in order for the contract to be enforceable. *See McErlean v. Union Nat'l Bank*, 414 N.E. 2d 128, 132 (Ill. Ct. App. 1980); *Epperly v. Johnson*, 734 N.E. 2d 1066, 1071 (Ind. Ct. App. 2000).

[5] Allegations concerning the content of the Supplemental Directive 09-01 are not contained in the FAC.  The Court, however, takes judicial notice of this document.  A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Additionally, a court may take judicial notice of "'matters of public record' without converting a motion to dismiss into a motion for summary judgment."  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)).  Under the incorporation by reference doctrine, courts may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)) (alteration in original).

allegation that both parties accepted the pre-determined HAMP modification terms when they signed the TPP Agreements is sufficiently plausible survive Defendant's Rule 12(b)(6) challenge.

In light of the above, the Court DENIES Defendant's Motion to dismiss the breach of contract claim.

### 2. Third Party Beneficiaries of the SPA

Plaintiffs bring their Third Part Beneficiary Claim as an alternative to the first claim for breach of contract, alleging that they have standing to sue as the intended third party beneficiaries of the SPA Agreement between Defendant and United States Treasury. Defendant counters Plaintiffs' theory by arguing that Plaintiffs do not have the requisite standing to sue.

The Supreme Court recently considered an issue identical to the one presented here in *Astra USA, Inc. v. Santa Clara County*, — S. Ct. —, 2011 WL 1119021 (March 29, 2011). *Astra* involved a third-party beneficiary theory brought by health care facilities that had been over-charged by pharmaceutical companies in violation of the Pharmaceutical Pricing Agreement ("PPA"), which the pharmaceutical companies had entered into with the United States Department of Health and Human Services. *Id*. at *1. The PPA was created pursuant to the Public Health Services Act ("PHSA"), 42 U.S.C. § 256b. *Id*. In passing PHSA, Congress provided no private right of action to enforce its provisions. *Id*. Upon reviewing these facts, the Supreme Court held that allowing health care facilities to sue as third party beneficiaries to the PPA was "incompatible with the statutory regime." *Id*. The Court reasoned that since the PPA agreements serve as the mechanism by which pharmaceutical companies opt-in to PHSA's statutory scheme, a third-party private action would amount to direct enforcement of the PHSA. *Id*. at *5.

Likewise, Defendant – and other banks – opt-in to the TARP and HAMP statutory scheme by signing the SPA with the United States Treasury. Allowing the Plaintiffs to enforce the SPA under a third-party beneficiary theory would open a "backdoor" to a private right of action to enforce HAMP, in contravention of Congress' wishes. As the Supreme Court held in *Astra*, this kind of third party beneficiary theory is "incompatible with the statutory regime." *Id*.

Accordingly, the Court GRANTS Defendant's Motion to dismiss the third-party SPA beneficiary claim. This claim is DISMISSED WITH PREJUDICE.

### 3. Promissory Estoppel

Plaintiffs also bring a claim for promissory estoppel, alleging that they relied to their detriment on Defendant's promise to provide the HAMP loan modifications. "An essential element of any estoppel is detrimental reliance on the adverse party's misrepresentations." *Lung v. Payne*, 476 U.S. 926 (1986). Defendant contends that Plaintiffs did not rely to their detriment and that this claim consequently fails.

At the start of the FAC, Plaintiffs allege detrimental reliance by stating that "[Defendant's] conduct . . . prevented [Plaintiffs] from pursuing other avenues of resolution, including using the money they are putting towards their . . . TPP Agreement trial payments to fund bankruptcy plans, relocation costs, short sales, or other means of curing their default." FAC ¶ 10.  In its Motion to Dismiss, Defendant contends that Plaintiffs have not suffered any detriment, as the Plaintiffs "benefited [*sic*] by making reduced mortgage payments while remaining in their homes." Defendant's Motion to Dismiss ¶ 22.  Defendant's argument is shortsighted.  Plaintiffs were presumably eligible for the trial period due to the fact that their mortgages were in default.  Plaintiffs were facing imminent foreclosure proceedings.  Instead of using their money to pursue other means of curing their default, including, for instance, immediate bankruptcy proceedings, Plaintiffs chose to participate in the trial.  Plaintiffs have thus lost both time and money in foregoing other opportunities to cure their defaults.

Accordingly, the Court DENIES Defendant's Motion to dismiss the promissory estoppel claim.

### 4. Injunctive Relief

Plaintiffs title their fourth cause of action, "Injunctive Relief." FAC ¶ 34.  Plaintiffs stipulate to the dismissal of this claim with leave to amend the FAC to include injunctive relief as part of the prayer for relief.

Therefore, the Court GRANTS Defendant's Motion to dismiss the injunctive relief claim.  Plaintiffs may amend their FAC to include injunctive relief as a remedy.

### 5. California Consumer Legal Remedies Act

California Plaintiffs ("CA Plaintiffs") bring a claim under the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770, *et seq*.  Defendant contends that this claim must be dismissed because (1) the CA Plaintiffs fail to sufficiently plead damages, as required by the statute, and (2) the CLRA does not apply to mortgage transactions.[6]

(1) Damage Requirement Under the CLRA

The text of Cal. Civ. Code § 1780 requires that a consumer "suffer[] any damage as a result of use or employment by any person of a method, act, or practice declared unlawful by Section 1770 [in order to] bring an action against that person to recover . . ."  A plaintiff suffers "any damage" when he

---

[6] In the alternative, Defendant argues that Plaintiffs' allegations of fraud lack particularity and do not satisfy the pleading requirement of Fed. R. Civ. P. 9(b).  The Court finds, however, that Plaintiffs allege Defendant's fraud in great detail. *See* FAC ¶ 36-38.  For this reason, application of Rule 9(b) does not warrant dismissal of Plaintiffs' CLRA claim.

or she incurs "some kind of increased cost or burden," excluding the "infringement of a legal right." *Meyer v. Sprint Spectrum, L.P.*, 45 Cal. 4th 634, 643, n. 3 (2009).  A plaintiff bringing a CLRA must suffer damage above and beyond the infringement of a legal right because "[t]he mere employment of an unlawful practice [is] insufficient to authorize a CLRA suit." *Id*.  Even a plaintiff seeking injunctive relief must comply with the damage requirement of Cal. Civ. Code § 1780. *Id*. at 644.

The Court finds that Plaintiffs meet the damages requirement of CLRA.  Plaintiffs allege that "[Defendant's] conduct . . . prevented [Plaintiffs] from pursuing other avenues of resolution, including using the money they are putting towards their . . . TPP Agreement trial payments to fund bankruptcy plans, relocation costs, short sales, or other means of curing their default."[7] FAC ¶ 10.  As previously noted, Plaintiffs forewent other avenues of curing their default, one of which was the opportunity to file for bankruptcy before paying three more months of mortgage payments.  Plaintiffs thus sustained an "increased cost or burden"as required under the CLRA.

### (2) Mortgage Transactions Under the CLRA

Defendant next argues that the text of the CLRA limits "deceptive acts" to those involving "goods and services" and that mortgage transactions do not fall into either of these categories. Plaintiffs allege violations of subsection (2), (5), (7), and (9) of the CLRA, which lists as "deceptive acts":

> (2) Misrepresenting the source, sponsorship, approval, or certification of goods or services.
>
> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.
>
> (9) Advertising goods or services with intent not to sell them as advertised.

In their Motion in Opposition, Plaintiffs point to Section 1760 of the CLRA, which begins with

---

[7] The CA Plaintiffs also adequately alleged the "employment of an unlawful practice" and the "infringement of a legal right" by alleging Defendant's denial of HAMP loan modifications, but these allegations are presently insufficient to sustain a CLRA claim. *Id*. at 643.

the provision: "[t]his title shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760. Indeed, the Supreme Court of California has interpreted the CLRA to apply to a broad range of services, including financial services. *See Kagan v. Gibraltar Sav. & Loan Assoc.*, 35 Cal. 3d 582, 596-97 (1984), *disapproved on other grounds*. Mortgage loans are a type of financial transaction and likewise appear to fall within the scope of a "service" as defined by the text of the CLRA. Thus, Defendant "has failed to persuade this Court that financial services related to real estate transactions are excepted from CLRA's scope." *Jefferson v. Chase Home Finance LLC*, 2007 WL 1302984, (N.D. Cal. 2007) (holding that Defendant's mortgage loan transactions fall within the ambit of the CLRA).

Accordingly, the Court DENIES Defendant's Motion to dismiss Plaintiffs' claim under the California Legal Remedies Act**.**

### 6. Illinois Consumer Fraud and Deceptive Business Practices Act

Defendant contends that the Illinois Plaintiffs' ("IL Plaintiffs") claim for a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS § 505, *et seq*., must fail because the IL Plaintiffs do not allege an actionable "unfair business practice" under the statute.

Interpreting the IFCA, the Supreme Court of Illinois held that "[a] breach of a promise, without more, is not actionable under the Consumer Fraud Act." *Avery v. State Farm Mutual Auto Ins. Co.*, 835 N.E.2d 801, 844 (2005). The Court further stated:

> What plaintiff calls "consumer fraud" or "deception" is simply defendants' failure to fulfill their contractual obligations. Were our courts to accept plaintiff's assertion that promises that go unfulfilled are actionable under the Consumer Fraud Act, consumer plaintiffs could convert any suit for breach of contract into a consumer fraud action. However, it is settled that the Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy.

*Id*. Here, Defendant argues that Plaintiffs' allegations of misrepresenting the TPP Agreement amount to nothing more than a recasting of "their breach of contract claim in IFCA clothing." Defendant's Motion to Dismiss ¶ 30. Indeed, Plaintiffs' FAC repeats the same allegations of Defendant's failure to abide by the TPP Agreements and fails to allege another basis for an unfair business practice under IFCA. FAC ¶ 39-40. For this reason, Plaintiffs' theory fails to sustain an IFCA claim as a matter of law.

Therefore, the Court GRANTS Defendant's Motion to dismiss Plaintiffs' claim under the Illinois Consumer Fraud and Deceptive Business Practices Act.

### 7. New York General Business Law § 349

New York Plaintiffs ("NY Plaintiffs") bring a claim for a violation of General Business Law § 349 ("Section 349 "). In the case of the NY Plaintiffs, Defendant entered into a HAMP loan modification contract after the NY Plaintiffs completed the trial period. FAC, Ex. N. In spite of this, Defendant sent the NY Plaintiffs the same letter that the other Plaintiffs received, which stated that the NY Plaintiffs could not receive a loan modification because they did not qualify. FAC, Ex Q. This alleged fraudulent behavior forms the basis of the NY Plaintiffs' Section 349 claim.

In order to state a prima facie violation of Section 349, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F. 3d 518, 521 (2nd Cir. 2000). In support of the first prong of the analysis, the plaintiff must demonstrate that the alleged behavior of the defendant is "consumer oriented conduct," and thus broadly affects consumers. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995). "Single shot transactions," which effect only the specific plaintiff, do not satisfy this requirement. *Id*. (citing *Genesco Entertainment, a Div. of Lymott Industries, Inc. v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984)). In pleading a violation of Section 349, however, "[p]laintiff . . . need not show that the defendant committed the complained-of acts repeatedly-either to the same plaintiff or to other consumers-but instead must demonstrate that the acts or practices have a broader impact on consumers at large." *Oswego*, 85 N.Y.2d at 25.

Because the NY Plaintiffs allege a slightly different set of facts than the other Plaintiffs in this case, Defendant argues that the NY Plaintiffs' injury is distinct from potential injuries suffered by consumers at large. Plaintiffs contend, however, that Defendant's conduct towards them falls within the larger umbrella of "improperly implement[ing] the HAMP program to an unspecified number of New York consumers." Plaintiffs' Brief in Opposition ¶ 29. Plaintiffs point out that the FAC alleges a pattern of deceptive acts that misled consumers, and that the NY Plaintiffs' particularized experience of that deception does not exclude them from bringing a Section 349 claim. For instance, the FAC alleges that Defendant's "loan modification system was riddled with flaws" and that Defendant "routinely provided false information regarding its processes and standards." FAC ¶ 45, 46. As a bank, it is plausible that Defendant regularly extended HAMP loan modification and TPP Agreement offers to consumers. Thus, Defendant may have routinely engaged in the fraudulent conduct alleged by the NY Plaintiffs. Moreover, the NY Plaintiffs need not allege that Defendant repeatedly committed the same fact pattern against other consumers in order to survive a 12(b)(6) motion. *Oswego*, 85 N.Y.2d at 25 (holding that plaintiff did not need to show that defendant repeated the same act against consumers to

sustain a Section 349 claim).  It is sufficient that the NY Plaintiffs plead an overarching pattern of fraudulent conduct connected with the HAMP loan modification process that affects the consumer populace. *Id*.

Accordingly, the Court DENIES Defendant's Motion to dismiss Plaintiffs' claim under New York General Business Law § 349.

### 8. Nevada Deceptive Trade Practices Act

Defendant argues that the Nevada Plaintiffs ("NV Plaintiffs") fail to sufficiently plead a "deceptive trade practice" within the meaning of the Nevada Deceptive Trade Practices Act ("NDTPA"), N.R.S. 598.0915, *et seq*.  NV Plaintiffs allege violations of subsections (5), (9), (10), and (15) of the NRS 598.0915, which state that a party engages in a "deceptive trade practice" if he or she:

> (5) Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith.
>
> (9) Advertises goods or services with intent not to sell or lease them as advertised.
>
> (10) Advertises goods or services for sale or lease with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity.
>
> (15) Knowingly makes any other false representation in a transaction.

Of these alleged violations, "[o]nly subsection fifteen of [NDPTA] could plausibly state a claim upon which relief could be granted" in this case.  "All other subsections of [NDPTA] apply specifically to goods and/or services." *Anderson v. Deutsche Bank National Trust Co.*, 2010 WL 4386958 (D. Nev. 2010) (holding that a loan modification could only sustain a claim for NDTPA under subsection (15)).

In respect to subsection (15), NV Plaintiffs adequately allege that Defendant knowingly misrepresented to them that it would extend a HAMP loan modification after completion of the trial period. FAC ¶ 49.  The NV Plaintiffs' claim for a violation of subsection (15) of the NDTPA thus survives Defendant's Rule 12(b)(6) Motion.

Accordingly, the Court DENIES Defendant's Motion to dismiss Plaintiffs' claim under the Nevada Deceptive Trade Practices Act claim with respect to subsection (15) and GRANTS with respect to subsection (5), (9), and (10).

### 9. Indiana Deceptive Consumer Sales Act

With respect to the Indiana Plaintiffs ("IN Plaintiffs"), Defendant contends that their claim under the Indiana Deceptive Consumer Sales Act ("IDCSA"), Ind. Code § 24-5-0.5-1, *et seq.*, must be dismissed because its alleged misconduct does not fit into any of the statute's delineated categories. Defendant's Motion to Dismiss ¶ 36. Plaintiffs allege violations of provisions (a)(1), (2), (4), and (11), which list the following misrepresentations as "deceptive acts":

> (1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have.
>
> (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.
>
> (4) That such subject of a consumer transaction will be supplied to the public in greater quantity than the supplier intends or reasonably expects.
>
> (11) That the consumer will be able to purchase the subject of the consumer transaction as advertised by the supplier, if the supplier does not intend to sell it. Ind. Code § 24-5-0.5-3.

The Court agrees with Defendant that IN Plaintiffs' allegations fail to plausibly state an IDSCA violation. As to the first alleged violation, Defendant did not misrepresent the "sponsorship, approval, performance, characteristics, accessories, uses, or benefits" of the TPP Agreements; the plain language of the TPP Agreements states these items. *See* FAC, Ex J. The second alleged violation also fails because Defendant did not misrepresent the "particular standard, quality, grade, style, or model" of the TPP Agreements. Plaintiffs come close to pleading a violation of subsection (4) but fail to adequately allege Defendant's overarching intent or expectation as to its supply of loan modifications. As to the last alleged violation, the IN Plaintiffs fail to plead that Defendant "advertised" its trial or HAMP loan modifications and also fail to plead that these are goods subject to sale.

In sum, the IN Plaintiffs plead facts sufficient to substantiate a claim for fraud generally. But because the IDCSA does not contain a "general 'fraud' category" . . . [the Court is] bound by its current language" and must dismiss Plaintiffs' IDSCA claim. *Lawson v. Hale*, 902 N.E.2d 267, 274 (Ind. Ct. App. 2009). In dismissing these alleged violations, however, the Court is "not saying that [Defendant's] acts were not deceptive . . . but only that the categories of deceptive acts giving rise to liability under the IDCSA are very specifically defined." *Id*.

For these reasons, the Court GRANTS Defendant's Motion to dismiss Plaintiffs' claim under the

Indiana Deceptive Consumer Sales Act.  This claim is DISMISSED WITH LEAVE TO AMEND.

### IV. Disposition

In light of the foregoing, the Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss.

The Court GRANTS dismissal as to Plaintiffs' third party beneficiary, injunctive relief, Illinois Consumer Fraud and Deceptive Business Practices Act, and Indiana Deceptive Consumer Sales Act claims.  Plaintiffs' injunctive relief and Indiana Deceptive Consumer Sales Act claims are DISMISSED WITH LEAVE TO AMEND. Plaintiffs' third party beneficiary claim is DISMISSED WITH PREJUDICE.   Plaintiffs shall file any amended complaint by May 2, 2011.  Defendant shall have until May 23, 2011 to answer, move to dismiss, or otherwise respond to any amended complaint.

The Court DENIES dismissal as to Plaintiffs' breach of contract, promissory estoppel, California Consumer Legal Remedies Act, New York General Business Law § 349, and Nevada Deceptive Trade Practices Act.

The Clerk shall serve this minute order on all parties to the action.