ROBERT KROPP, JR. (SBN 61780)
rkropp@BushGottlieb.com
BUSH GOTTLIEB SINGER LÓPEZ
KOHANSKI ADELSTEIN & DICKINSON
A Law Corporation
500 North Central Avenue, Suite 800
Glendale, California  91203-3345
Telephone:  (818) 973-3200
Facsimile:  (818) 973-3201

CHRISTOPHER M. ELLIS
cellis@brelaw.com
SHANE M. MENDENHALL
smendenhall@brelaw.com
BOLEN, ROBINSON & ELLIS, LLP
202 South Franklin Street, 2nd Floor
Decatur, Illinois  62523
Telephone:  (217) 429-4296
Facsimile:   (217) 329-0034

ERIC D. HOLLAND
eholland@allfela.com
GERARD B. SCHNELLER
gschneller@allfela.com
R. SETH CROMPTON
scrompton@allfela.com
HOLLAND, GROVES, SCHNELLER &
STOLZE, LLC
300 N. Tucker, Suite 801
St. Louis, Missouri  63101
Telephone:  (314) 241-8111
Facsimile:  (314) 241-5554

CHARLES E. SCHAFFER
cschaffer@lfsblaw.com
LEVIN, FISHBEIN, SEDRAN &
BERMAN
510 Walnut Street, Suite 500
Philadelphia, PN  19106
Telephone:  (215) 592-1500
Facsimile:  (215) 592-4663

Attorneys for Plaintiffs
KELLY TURBEVILLE, MICHAEL AND AUDRA SCHMIERER, JACQUELYN
AND SAMUEL COLLETTA, THOMAS AND FELICIA MINERVA, RONALD
RYAN, AND ANTHONY TAYLOR, on behalf of themselves and a class of all
other persons similarly situated



ORIGINAL

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

229757.1 29000-20001

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

LODGED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT
MAY - 2 2011
CENTRAL DISTRICT OF CALIFORNIA
BY                DEPUTY

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT
MAY - 2 2011
CENTRAL DISTRICT OF CALIFORNIA
BY                DEPUTY

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

| | |
|---|---|
| 1  KELLY TURBEVILLE, MICHAEL<br>    AND AUDRA SCHMIERER,<br>2  JACQUELYN AND SAMUEL<br>    COLLETTA, THOMAS AND<br>3  FELICIA MINERVA, RONALD<br>    RYAN, AND ANTHONY TAYLOR,<br>4  on behalf of themselves and a class of<br>    all other persons similarly situated,<br>5<br>        Plaintiff,<br>6<br>7      vs.<br>8  JPMORGAN CHASE & CO. and<br>    JPMORGAN CHASE BANK, N.A.,<br>9  d/b/a CHASE HOME FINANCE, LLC,<br>        Defendants. | CASE NO. 10-cv-01464-DOC(JCGx)<br>CLASS ACTION<br><br>SECOND AMENDED COMPLAINT<br>FOR DAMAGES<br>(BREACH OF CONTRACT;<br>PROMISSORY ESTOPPEL;<br>BREACH OF THE IMPLIED<br>COVENANT OF GOOD FAITH<br>AND FAIR DEALING;<br>VIOLATION OF CALIFORNIA<br>CONSUMER LEGAL REMEDIES<br>ACT;<br>VIOLATION OF CALIFORNIA<br>UNFAIR COMPETITION LAW;<br>VIOLATION OF ILLINOIS<br>CONSUMER FRAUD AND<br>DECEPTIVE PRACTICES ACT;<br>VIOLATION OF NEW YORK GEN.<br>BUS. §349;<br>VIOLATION OF NEVADA<br>DECEPTIVE TRADE PRACTICES<br>ACT;<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs KELLY TURBEVILLE, MICHAEL AND AUDRA SCHMIERER, JACQUELYN AND SAMUEL COLLETTA, THOMAS AND FELICIA MINERVA, RONALD RYAN, AND ANTHONY TAYLOR, ("Turbeville", "Schmierer", "Colletta", "Minerva", "Ryan", "Taylor" or "Plaintiffs"), by and through their attorneys, bring this action, on behalf of themselves and all others similarly situated, against Defendants, JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A., d/b/a Chase Home Finance, LLC (collectively "Chase" or "Defendant"), and, except for information based on their own personal knowledge, allege on information and belief based on the investigation conducted by their counsel, and the facts that are a matter of public record, as follows:

1.    Plaintiffs' claims are simple – when a large financial institution promises to modify an eligible loan to prevent foreclosure, homeowners who live up to their end

of the bargain expect that promise to be kept. This is especially true when the financial institution is acting under the protection of a federal program that is specifically targeted at preventing foreclosure.

2.    Plaintiffs bring this suit on behalf of themselves and a class of similarly situated homeowners nationwide ("Plaintiffs" or "Class"), to challenge the intentional and systematic program of Defendant Chase to avoid offering or failing to offer permanent loan modifications to qualified borrowers.

3.    In doing so, Chase has: (1) serially failed to honor its contractual obligations under its Trial Period Plan Agreements ("TPP Agreements") as well as its borrowers' loan documents; (2) breached its Servicer Participation Agreement ("SPA") with the Federal National Mortgage Association ("Fannie Mae"); (3) made repeated misrepresentations of material fact; and (4) engaged in business practices that are immoral, unscrupulous, unfair, and oppressive.

4.    Under the Troubled Asset Relief Program ("TARP"), also known as the taxpayer bailout, the United States Government provided the nation's largest financial institutions with nearly $700 billion in funds to address what was widely accepted as an unprecedented financial crisis. 12 U.S.C. §5211. In or around October 2008, Defendant Chase accepted $25 billion in TARP funds.

5.    A key feature of TARP is the Making Home Affordable Program, of which the Home Affordable Modification Program ("HAMP" or "the HAMP") is a major component.  HAMP is a program under which Chase and other major banks receive incentive payments for providing mortgage loan modifications to eligible borrowers such as Plaintiffs and the putative Class members.

6.    On July 31, 2009, Michael R. Zarro Jr., Sr. Vice President of JPMorgan Chase Bank, N.A., signed a contract with the U.S. Treasury, through its agent, Fannie Mae, agreeing to participate in HAMP as an approved HAMP servicer. (*See* "SPA", Ex. A.).

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

7. As a HAMP servicer, Chase entered into written TPP Agreements for temporary modifications with Plaintiffs and other eligible Chase borrowers. These Agreements and representations made by Chase require Chase to extend a formal offer for a permanent loan modification upon a borrower's completion of his or her respective trial period and continued compliance with the Agreement.

8. Plaintiffs, as well as the members of the Class, have complied with all contractual obligations by submitting all required documentation, answering all questions truthfully, and by making trial period payments. Despite Plaintiffs' and the other putative Class members' full performance, Chase has ignored its obligations by arbitrarily breaching TPP Agreements and otherwise refusing to extend offers for permanent modification to its eligible borrowers as required under the program guidelines, its contracts and its representations.

9. Chase's breaches of TPP Agreements and its failure to extend offers for permanent modification is no accident. To the contrary, Chase has knowingly established a system designed to wrongfully deprive its eligible HAMP borrowers of an opportunity to modify their mortgages, pay their loans, and save their houses from foreclosure. Chase's actions, which serve only its interest in extracting as much money as possible from borrowers it deems are at risk of default, thwart the very purpose of HAMP, and constitute breaches of its various contracts.

## JURISDICTION AND VENUE

10. Jurisdiction is proper pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2). This claim is brought as a putative class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the class of Plaintiffs is a citizen of a State different from the Defendant.

11. Venue is proper in this Court pursuant to 28 U.S.C. §1391(c) because Defendants are subject to personal jurisdiction in this district.

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

12.   This action is ripe for adjudication.

**PARTIES**

13.   Plaintiff Kelly Turbeville is a natural person and citizen of the state of California. Plaintiff Kelly Turbeville is a citizen of the City of Trabuco Canyon, Orange County, California and her home mortgage is the loan at issue in this lawsuit. At all times relevant, Plaintiff was qualified and eligible to participate in the HAMP program under all applicable directives and guidelines, a conclusion Chase would have reached had it accurately applied such guidelines and directives.

14.   Plaintiffs Michael and Audra Schmierer are natural persons and citizens of the state of California. Michael and Audra Schmierer are citizens of Dublin, Alameda County, California and their home mortgage is the loan at issue in this lawsuit. At all times relevant, Plaintiffs were qualified and eligible to participate in the HAMP program under all applicable directives and guidelines, a conclusion Chase would have reached had it accurately applied such guidelines and directives.

15.   Plaintiffs Jacquelyn and Samuel Colletta are natural persons and citizens of the state of Illinois. Plaintiffs Jacquelyn and Samuel Colletta are citizens of Lincolnwood, Cook County, Illinois and their home mortgage is the loan at issue in this lawsuit. At all times relevant, Plaintiffs were qualified and eligible to participate in the HAMP program under all applicable directives and guidelines, a conclusion Chase would have reached had it accurately applied such guidelines and directives.

16.   Plaintiffs Thomas and Felicia Minerva are natural persons and citizens of the state of New York. Plaintiffs Thomas and Felicia Minerva are citizens of Bellmore, Nassau County, New York and their home mortgage is the loan at issue in this lawsuit. At all times relevant, Plaintiffs were qualified and eligible to participate in the HAMP program under all applicable directives and guidelines, a conclusion Chase would have reached had it accurately applied such guidelines and directives.

17.   Plaintiff Ronald Ryan is a natural person and citizen of the state of

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

Nevada. Plaintiff Ronald Ryan is a citizen of Las Vegas, Clark County, Nevada, and his home mortgage is the loan at issue in this lawsuit. At all times relevant, Plaintiff was qualified and eligible to participate in the HAMP program under all applicable directives and guidelines, a conclusion Chase would have reached had it accurately applied such guidelines and directives.

18.     Plaintiff Anthony Taylor is a natural person and citizen of the state of Indiana. Plaintiff Anthony Taylor is a citizen of Lafayette, Tippecanoe County, Indiana, and his home mortgage is the loan at issue in this lawsuit. At all times relevant, Plaintiff was qualified and eligible to participate in the HAMP program under all applicable directives and guidelines, a conclusion Chase would have reached had it accurately applied such guidelines and directives.

19.     JPMorgan Chase & Co., is a registered bank holding company with its corporate headquarters located in New York, New York. JPMorgan Chase & Co. owns and controls JPMorgan Chase Bank, N.A., and numerous direct and indirect nonbank subsidiaries.

20.     JPMorgan Chase Bank, N.A. is a national banking association with its corporate headquarters located in Columbus, Ohio. Chase Home Finance, LLC is an operating subsidiary of JPMorgan Chase Bank, N.A. that, according to the US Department of Treasury's website is located in Iselin, New Jersey.[1]

21.     At all times relevant, JPMorgan Chase Bank, N.A. operated and/or controlled Chase Home Finance, LLC as its division and specifically represented to

---

[1] US Department of Treasury, National Bank Operating Subsidiary List, *available at* URL http://www.helpwithmybank.gov/national_banks/subsidiaries.html#c (last visited April 14, 2011).

1   Plaintiffs and the Class members that it would honor loan modifications originated by

2   Chase Home Finance, LLC.

3                          **FACTUAL BACKGROUND**

4   *Congressional Response to National Foreclosure Crisis*

5          22.    Over the last three years, the United States has witnessed a foreclosure

6   crisis.  A congressional oversight panel has recently noted that one in eight U.S.

7   mortgages is currently in foreclosure or default, and an additional 250,000 foreclosures

8   were beginning every month.[2]   In April 2010, the congressional oversight panel

9   reported that foreclosures were continuing at a rapid pace. In total, 2.8 million

10  homeowners received a foreclosure notice in 2009.[3]   Increased foreclosures have a

11  detrimental effect on borrowers who are at serious risk of losing their homes.

12  Foreclosures also have a negative impact on the surrounding neighborhoods that suffer

13  decreased property values, and municipalities lose tax revenue as a result of

14  foreclosures.

15         23.    On October 3, 2008, Congress passed the Emergency Economic

16  Stabilization Act of 2008 and, on February 17, 2009, Congress amended the statute by

17  passing the American Recovery and Reinvestment Act of 2009 (collectively the "Act").

18  12 U.S.C. §5201 *et. seq.* (2009).  The purpose of the Act is to grant the Secretary of the

19  Treasury the authority to restore liquidity and stability to the financial system and

---

21  [2] *October Oversight Report: An Assessment of Foreclosure Mitigation Efforts After Six*
22  *Months*, Congressional Oversight Panel at 3 (October 9, 2009), *available at*
    http://cybercemetery.unt.edu/archive/cop/20110401233847/http://cop.senate.gov/docu
23  ments/cop-100909-report.pdf (last visited April 14, 2011).

24  [3] *April Oversight Report: Evaluating Progress on TARP Foreclosure Mitigation*
25  *Programs*, Congressional Oversight Panel at 3 (April 14, 2010), *available at*
    http://cybercemetery.unt.edu/archive/cop/20110401232823/http://cop.senate.gov/docu
26  ments/cop-041410-report.pdf (last visited April 14, 2011).

27

28                          Second Amended Class Action Complaint
                                10-cv-01464-DOC(JCGx)

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

1   ensure that such authority is used in a manner that "protects home values" and
2   "preserves homeownership." 12 U.S.C. §5201.

3        24.    The Act grants the Secretary of the Treasury the authority to establish
4   TARP.  12 U.S.C. §5211.  Under TARP, the Secretary may purchase or make
5   commitments to purchase troubled assets from financial institutions. *Id.* In exercising
6   its authority to administer TARP, the Act mandates that the Secretary "shall" take into
7   consideration the "need to help families keep their homes and to stabilize
8   communities." 12 U.S.C. §5213(3).

9        25.    The Act further mandates, with regard to any assets acquired by the
10  Secretary that are backed by residential real estate, that the Secretary "shall implement
11  a plan that seeks to maximize assistance for homeowners" and that uses the Secretary's
12  authority over servicers to encourage them to take advantage of programs to "minimize
13  foreclosures."  12 U.S.C. §5219.  The Act grants authority to the Secretary of the
14  Treasury to use credit enhancement and loan guarantees to "facilitate loan
15  modifications to prevent avoidable foreclosures." *Id.* The Act further imposes parallel
16  mandates to implement plans to maximize assistance to homeowners and to minimize
17  foreclosures. 12 U.S.C. §5220.

18       26.    On February 18, 2009, pursuant to their authority under the Act, the
19  Treasury Secretary and the Director of the Federal Housing Finance Agency announced
20  the HAMP program.  Under HAMP, the federal government incentivizes participating
21  servicers to enter into agreements with struggling homeowners that will make
22  adjustments to existing mortgage obligations in order to make the monthly payments
23  more affordable.  Servicers receive $1,000.00 for each HAMP modification.

24  ***Servicer Participation in the HAMP program***

25       27.    The industry entities that perform the actual interface with borrowers –
26  including such tasks as payment processing, escrow maintenance, loss mitigation and
27  foreclosure – are known as "servicers."  Servicers typically act as the agents of the

28
                    Second Amended Class Action Complaint
                         10-cv-01464-DOC(JCGx)
                                   8

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

1  entities that hold mortgage loans.  Chase Home Finance, LLC is a servicer operated by

2  JPMorgan Chase Bank, N.A., and its actions described herein were made as agents for

3  the entities that hold mortgage loans.

4  28.  To participate in HAMP, a servicer must execute a Servicer Participation

5  Agreement ("SPA") with the federal government.

6  29.  On July 31, 2009, Michael R. Zarro Jr., Sr. Vice-President of Chase Home

7  Finance executed an SPA, thereby making Chase a participating servicer in HAMP.

8  30.  The SPA executed by Mr. Zarro incorporates all "guidelines,"

9  "procedures," and "supplemental documentation, instructions, bulletins, frequently

10  asked questions, letters, directives, or other communications" issued by the Treasury,

11  Fannie Mae or Freddie Mac, in connection with the duties of Participating Servicers.

12  31.  The SPA mandates that a Participating Servicer "shall perform" the

13  activities described in the Program Documentation "for all mortgage loans it services."

14  32.  The Program Documentation requires Participating Servicers to evaluate

15  *all loans* that are delinquent 60 days or greater for HAMP modifications.  In addition, if

16  a borrower contacts a Participating Servicer regarding a HAMP modification, the

17  Participating Servicer must collect income and hardship information to determine if

18  HAMP is appropriate for the borrower.

19  *Agreements*

20  33.  A HAMP Modification consists of two stages.  First, a Participating

21  Servicer is required to gather a borrower's financial and other relevant information and,

22  if the borrower qualifies, offer the borrower a TPP Agreement.  In some cases, banks

23  may pre-qualify customers based on verbal representations of income and other

24  information, instruct the customer to begin making the reduced temporary payment, and

25  then confirm eligibility following the borrower's submission of the required documents.

26  As an alternative, banks may require that the borrower submit all necessary income

27

28

information and documentation to confirm the borrower's eligibility to enter into a TPP Agreement.

34.    Chase's form TPP Agreements require borrowers to make certain representations, provide relevant information, and make trial period payments at a revised rate designed to keep the borrower in his or her home. Chase's TPP Agreements provide that Chase will extend offers for permanent modification to homeowners who fulfill the documentation, representation, and payment requirements.

35.    If a homeowner complies with all documentation and representation requirements, and makes all of the TPP monthly payments on time, the second stage of the HAMP process is triggered in which Chase is required to offer the home owner a permanent loan modification.   This lawsuit challenges the fact that, despite full performance by its borrowers, Chase routinely and systematically fails to extend offers for permanent modifications to such borrowers, including the named Plaintiffs and the members of the Class.

36.    Chase's voluntary participation in HAMP has been accompanied by a dismal track record for completing HAMP modifications. In February 2010, the U.S. Treasury reported that Chase had 432,416 HAMP-eligible loans in its portfolio.[4] Trial periods had been started on only 170,028. Of these, just 11,581 resulted in permanent modifications (only 6.8% of the started Trial modifications and 2.6% of the eligible pool) even though many more homeowners had made the payments and submitted the documentation required by the TPP Agreement. The report indicates that Chase is among the worst servicers in the nation in terms of the conversion rate of trial period

---

[4] Making Home Affordable Program: Servicer Performance Report Through January 2010 (February 18, 2010), *available at* http://www.treasury.gov/initiatives/financial-stability/results/MHA-Reports/Documents/January Report FINAL 02 16 10.pdf (last visited April 14, 2011).

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

1   plans into permanent modifications. This routine failure bespeaks a systematic flaw –

2   Chase is not meeting the obligations created when it enters into TPP Agreements.

3       37.     Chase's conduct described herein has deprived homeowners of their ability

4   to save their homes, and has instead left them in a state of limbo, unsure of whether

5   Chase is setting them up for foreclosure proceedings or whether they intend to continue

6   with foreclosure actions despite promises otherwise. Chase's conduct also prevents

7   borrowers from pursuing other avenues of resolution, including using the money they

8   are putting toward their or TPP Agreement trial payments to fund bankruptcy plans,

9   relocation costs, short sales, or other means of curing their default.

10              **FACTS RELATING TO NAMED PLAINTIFFS**

11      **Kelly Turbeville**

12      38.     In 2006, Plaintiff Kelly Turbeville obtained a mortgage loan for her

13  personal residence located in Trabuco Canyon, Orange County, California from

14  Washington Mutual, which later merged with Defendant Chase.

15      39.     In 2009, Plaintiff began falling behind in her mortgage payments. At that

16  time Chase informed her that she would be considered for some sort of loan

17  modification.

18      40.     In approximately April 2009, Plaintiff submitted a loan modification

19  package to Chase requesting a loan modification.

20      41.     Plaintiff was consistently rejected until February 2010, when she was told

21  that her loan would be permanently modified if she met certain conditions, specifically

22  if she made the required payments for three straight months.

23      42.     Chase sent Plaintiff a Trial Plan Agreement that called for Plaintiff to

24  remit the sum of $694.71 to Chase on or before March 1, 2010, April 1, 2010 and May

25  1, 2010. (*See* Ex. B).

26

27

28

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

43.   After these initial payments were successfully made, Chase instructed Plaintiff to continue to make the same payments on or before the first of each month, promising that her loan would soon be permanently modified.

44.   Plaintiff made her June, July, August and September payment in the same manner as she had made her prior payments.

45.   Plaintiff made all her TPP payments in a timely manner, and Chase accepted (and negotiated) these payments without qualification or protest of any kind.

46.   On August 18, 2010, Plaintiff received a letter from Chase which stated that "You have missed more than one monthly payment. . . . As of the date of this letter, the amount required to cure your delinquent home loan is $38,045.72. This letter was sent to Plaintiff despite the fact that she was enrolled in the TPP program, had made all her TPP payments in a timely manner, and was in full compliance with the TPP Agreement. A copy of said letter dated August 18, 2010 is attached as Exhibit C.

47.   Shortly after making her September 2010 payment, Plaintiff received a letter from Chase dated August 30, 2010, entitled "Statement of Eligibility for Loan Modification" (the "Statement of Eligibility"). A copy of the Statement of Eligibility is attached as Exhibit D.

48.   The Statement of Eligibility stated that "After researching your account, we have determined that you do not qualify for a modification through the Making Home Affordable ("MHA") modification program or through other modification programs offered by Chase at this time. You have been deemed ineligible for the following reason(s): We are unable to offer you a Home Affordable Modification because we are unable to create an affordable payment equal to 31% of your reported monthly gross income without changing the terms of your Loan beyond the requirements of the program."

49.   The same day Plaintiff received the Statement of Eligibility, she also received a letter from Chase that stated "Thank you for completing the first step of your

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

1 | trial mortgage modification period. . . ." A copy of said letter dated August 31, 2010 is
2 | attached as Exhibit E.

3 |     50.    Plaintiff complied with every request made of her by Chase and also fully
4 | complied with all other terms and requirements of the TPP Agreement.

5 |     51.    Despite Plaintiff's full compliance in all respects with the terms of the TPP
6 | Agreement, Chase failed to send her a modification agreement for her signature or
7 | otherwise extend her an offer for permanent modification.

8 |     52.    In early September 2010, Chase sent Plaintiff another request for
9 | information for Plaintiff to take part in their loan modification program. This request
10 | came despite the fact that Plaintiff had already provided all of the information requested
11 | on multiple occasions and had in fact already entered into a TPP Agreement and
12 | complied with all of its terms as described above. The above notwithstanding, in an
13 | effort to mitigate her damages, Plaintiff again completed the paperwork Chase sent.

14 |     53.    As of the filing of this Second Amended Complaint, Chase has not
15 | extended to Plaintiff an offer for permanent modification that is affordable or anywhere
16 | in line with the repeated promises Chase representatives made to Plaintiff. To the
17 | contrary, Chase has restarted its foreclosure activities and has done nothing but offer to
18 | reevaluate Plaintiff and possibly put her in line for another modification program
19 | despite the fact that Plaintiff was entitled to a permanent modification in May 2010
20 | after making the payments required under the TPP Agreement.

21 | **Michael and Audra Schmierer**

22 |     54.    Plaintiffs obtained a mortgage loan for their personal residence in Dublin,
23 | California. At all times relevant hereto, Plaintiffs' mortgage loan was held by
24 | Defendant Chase.

25 |     55.    Plaintiff Michael Schmierer was employed by JPMorgan Chase for 15
26 | years and was laid off in May 2008.

27 |     56.    Plaintiff Michael Schmierer was able to find a new job in September 2008

28 |

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

1  earning far less than before, but Plaintiffs ultimately were unable to stretch their income
2  any further and contacted the Chase loan modification center in May 2009.

3       57.    At that time, Plaintiffs were never late on any mortgage payment.

4       58.    On or about May 2009, Chase offered Plaintiffs a Trial Period Plan,
5  Plaintiffs accepted, and Chase sent correspondence confirming the dates and amounts
6  of the automatic debit. (*See* Ex. F).

7       59.    Plaintiffs accepted Chase's offer and entered into a Trial Plan Agreement
8  with Chase and the first payment was automatically debited from their bank account on
9  or about May 30, 2009 or June 1, 2009. (*See* Ex. F).

10      60.    Pursuant to this Trial Plan Agreement, Plaintiffs were to remit the sum of
11 $1,932.00 per month through an automatic debit to Chase for three months, starting on
12 May 30, 2009 or June 1, 2009.

13      61.    After these initial payments were successfully made, Chase instructed
14 Plaintiffs to continue to debit the same payments, promising that their loan would soon
15 be permanently modified.

16      62.    Plaintiffs made these additional payments requested by Chase for 15
17 months through August 2010.  In addition, Plaintiffs regularly updated their financial
18 information with Chase and sent Chase all additional requested documentation.

19      63.    During these 15 months while Chase was automatically debiting Plaintiffs
20 account, Plaintiffs would receive harassing phone calls and certified letters from Chase
21 stating Plaintiffs were going into foreclosure.

22      64.    Upon contacting Chase, Plaintiffs would always be reassured that they
23 were not going into foreclosure and that they were still in the process for final approval
24 of a loan modification.

25      65.    On August 25, 2010, Plaintiffs received from Chase correspondence titled
26 "Acceleration Warning (Notice of Intent to Foreclose)" advising that they were in
27 default and demanding $19,788.63 in monthly payments and $493.12 in late fees within

28

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

1   32 days or else Chase would accelerate the loan and foreclose on their home if they
2   could not make the necessary payments.  (See ex. G).

3      66.     On September 21, 2010, Plaintiffs were advised via correspondence that
4   their loan did not qualify under the HAMP program, despite the fact that Plaintiffs
5   complied with every request made of them by Chase, including 15 months of payments,
6   and also fully complied with all other terms and requirements of the TPP Agreement.
7   (See ex. H).

8      67.     Despite Plaintiffs' full compliance in all respects with the terms of the TPP
9   Agreement, Chase failed to send them a modification agreement for their signature or
10  otherwise extend them an offer for a permanent modification.  As of the filing of this
11  Second Amended Complaint, Chase has not extended to Plaintiffs an offer for a
12  permanent modification. To the contrary, Chase has restarted its foreclosure activities
13  and has done nothing despite the fact that Plaintiffs were entitled to a permanent
14  modification in August 2009 after making the payments required under the TPP
15  Agreement.

16  **Jacquelyn Colleta and Samuel Colleta**

17     68.     In 2007, Plaintiffs obtained a mortgage loan for their personal residence in
18  Lincolnwood, Illinois. At all times relevant hereto, Plaintiffs' mortgage loan was held
19  by Defendant Chase.

20     69.     In 2009, Plaintiffs began falling behind in their mortgage payments. At
21  that time Chase informed them that they would be considered for some sort of loan
22  modification.

23     70.     On or about October 22, 2009, Chase offered Plaintiffs a Trial Period Plan
24  ("TPP"). (See Ex. I).

25     71.     On November 9, 2009, Plaintiffs accepted Chase's offer and entered into a
26  TPP Agreement with Chase which became effective December 1, 2009. (See Ex. J).

27     72.     Pursuant to this Trial Plan Agreement, Plaintiffs were to remit the sum of

28

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

1  $1,860.00 to Chase on or before December 1, 2009, January 1, 2010 and February 1,
2  2010.

3       73.    After these initial payments were successfully made, Chase instructed
4  Plaintiffs to continue to make the same payments on or before the first of each month,
5  promising that their loan would soon be permanently modified.

6       74.    Plaintiffs made these additional payments requested by Chase through
7  September 2010. In addition, Plaintiffs regularly updated their financial information
8  with Chase and sent Chase all additional requested documentation.

9       75.    Plaintiffs made all their TPP payments in a timely manner, and Chase
10 accepted (and negotiated) these payments without qualification or protest of any kind.

11      76.    On August 6, 2010, Plaintiffs received a letter from Chase which stated
12 that "This letter is to confirm that you are electing not to proceed with the modification
13 either because you notified us that you wish to cancel your request, or you failed to
14 accept the offer materials within the required time period." (See Ex. K).

15      77.    Contrary to the August 6, 2010 letter Plaintiffs received from Chase,
16 Plaintiffs never elected not to proceed with the modification. At all times relevant
17 hereto, Plaintiffs were ready and willing to proceed with a permanent modification.

18      78.    When Plaintiffs called Chase and spoke to a customer service
19 representative employed by and acting as Chase's agent, Plaintiffs were told that the
20 August 6, 2010 letter was sent erroneously, and that Plaintiffs should disregard said
21 letter.

22      79.    On November 2, 2010, Plaintiffs received a letter denying them a
23 permanent mortgage loan modification. (See Ex. L).

24      80.    Plaintiffs complied with every request made of them by Chase and also
25 fully complied with all other terms and requirements of the TPP Agreement.

26      81.    Despite Plaintiffs' full compliance in all respects with the terms of the TPP
27 Agreement, Chase failed to send them a modification agreement for their signature or

28

1   otherwise extend them an offer for a permanent modification.

2   82.   As of the filing of this Second Amended Complaint, Chase has not

3   extended to Plaintiffs an offer for a permanent modification. To the contrary, Chase has

4   restarted its foreclosure activities and has done nothing but offer to reevaluate Plaintiffs

5   and possibly put them in line for another modification despite the fact that Plaintiffs

6   were entitled to a permanent modification in February 2010 after making the payments

7   required under the TPP Agreement.

8   **Thomas and Felicia Minerva**

9   83.   On or about June 23, 1995, Plaintiffs obtained a mortgage loan for their

10   personal residence located in Bellmore, New York. At all times relevant hereto,

11   Plaintiffs mortgage loan was held by Defendant Chase.

12   84.   In 2009, Plaintiffs began falling behind in their mortgage payments. At

13   that time Chase informed them that they would be considered for some sort of loan

14   modification.

15   85.   In early 2009, Plaintiffs submitted a loan modification package to Chase

16   requesting a loan modification.

17   86.   In May 2009, Plaintiffs received a Home Affordable Modification

18   Program Loan Workout Plan from Chase. (*See* Ex. M).

19   87.   Pursuant to this Trial Plan Agreement, Plaintiffs were to remit the sum of

20   $2,254.06 to Chase on or before May 1, 2009, June 1, 2009 and July 1, 2009.

21   88.   After these initial payments were successfully made, Chase instructed

22   Plaintiffs to continue to make the same payments on or before the first of each month,

23   promising that their loan would soon be permanently modified.

24   89.   On November 16, 2009, Plaintiffs mailed Chase a qualified written

25   request, pursuant to Section 6 of the Real Estate Settlement Procedures Act

26   ("RESPA"), 12 U.S.C. § 2605(e). Plaintiffs sent the request in order to notify Chase

27   that certain monthly mortgage payments had not been credited to their account, so that

28

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

1  Chase would properly credit Plaintiffs account and show a correct mortgage balance on
2  their account.

3       90.    Chase failed to timely respond, and in fact never responded, to Plaintiffs'
4  RESPA letter.

5       91.    Plaintiffs made all their TPP payments in a timely manner, and Chase
6  accepted (and negotiated) these payments without qualification or protest of any kind.

7       92.    On or about June 3, 2010, Plaintiffs received a Loan Modification
8  Agreement from Chase. (*See* Ex. N). The documentation Plaintiffs received stated "[t]o
9  accept this offer, please review the enclosed Modification Agreement, sign and date
10  where indicated, and return the entire Agreement (all pages), along with the signed
11  Flood Notice Acknowledgement (if applicable) in the enclosed overnight envelope to
12  the address provided by June 13, 2010."

13       93.    Pursuant to the terms of the Loan Modification Agreement, Chase agreed
14  to permanently modify the terms of Plaintiffs' mortgage and record the Loan
15  Modification Agreement upon receiving an executed copy of the Loan Modification
16  Agreement from Plaintiffs.

17       94.    On or about June 8, 2010, Plaintiffs' executed the Loan Modification
18  Agreement and returned it to Chase for a Chase representative to countersign and
19  record.

20       95.    In order to have their loan permanently modified, Plaintiffs were also
21  required to execute and return to Chase a Notice of Special Flood Hazards and
22  Availability of Federal Disaster Relief Assistance form. A copy of the Notice of Special
23  Flood Hazards and Availability of Federal Disaster Relief Assistance form is attached
24  hereto as Exhibit O.

25       96.    On or about June 8, 2010, Plaintiffs executed the Notice of Special Flood
26  Hazards and Availability of Federal Disaster Relief Assistance form and returned it to
27  Chase.

28

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

97.     Plaintiffs' accepted Chase's offer for a permanent loan modification by signing and returning all necessary documentation to Chase on or before June 13, 2010.

98.     Since executing and returning the Loan Modification Agreement, Plaintiffs have abided by all its terms and conditions and have made monthly payment amounts of $1,622.79 to Chase.[5]

99.     On or about August 24, 2010, approximately six (6) weeks after Plaintiffs executed and returned the Loan Modification Agreement to Chase, Plaintiffs received a letter from Chase stating that "[t]his loan is in default" and "[y]ou have been approved for a Special Forbearance Agreement." A copy of said letter is attached hereto as Exhibit P.

100.     On or about September 3, 2010, Plaintiffs received a letter from Chase dated August 30, 2010 stating that "Chase is writing in response to your recent request regarding a loan modification on the above-referenced account. After researching your account, we have determined that you do not qualify for a modification. . . ." A copy of said letter is attached hereto as Exhibit Q.

101.     On or about September 3, 2010, Plaintiffs called Chase and spoke to a Chase representative regarding their Loan Modification Agreement and the letter they received from Chase dated August 30, 2010. The Chase representative informed Plaintiffs that the Loan Modification Agreement documents from June were no longer valid and as such, Chase had no intention of countersigning and recording the Loan Modification Agreement. Further, Plaintiffs sent correspondence dated November 16, 2009 outlining the errors, omissions, actions, and inactions taken by Chase, but to no

---

[5] In fact, Plaintiffs have been making total monthly payment amounts of $2,821.46 to Chase. On information and belief, the additional $1,198.67 is to be applied to Plaintiffs escrow account.

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

1    avail. (*See* ex. R).

2        102.   Plaintiffs complied with every request made of them by Chase and also

3    fully complied with all other terms and requirements of the TPP Agreement and Loan

4    Modification Agreement.

5        103.   Despite Plaintiff's full compliance in all respects with the terms of the TPP

6    Agreement and Loan Modification Agreement, Chase failed to countersign and record

7    the Loan Modification Agreement permanently modifying Plaintiffs' loan.

8        104.   As of the filing of this Second Amended Complaint, Chase has not

9    countersigned and/or recorded the Loan Modification Agreement permanently

10   modifying Plaintiffs' loan. To the contrary, Chase has restarted its foreclosure activities

11   and has done nothing but offer to reevaluate Plaintiffs and possibly put them in line for

12   another modification program despite the fact that Plaintiffs were entitled to a

13   permanent modification in June 2010 after executing and returning the Loan

14   Modification Agreement to Chase.

15       **Ronald Ryan**

16       105.   In 2008, Plaintiff obtained a mortgage loan for his personal residence

17   located in Las Vegas, Nevada. At all times relevant hereto, Plaintiff's mortgage loan

18   was held by Defendant Chase.

19       106.   In 2009, Plaintiff began falling behind in his mortgage payments. At that

20   time Chase informed him that he would be considered for some sort of loan

21   modification.

22       107.   In early 2010, Plaintiff submitted a loan modification package to Chase

23   requesting a loan modification.

24       108.   In March 2010, Defendant Chase approved Plaintiff for a trial period plan

25   ("TPP Agreement") under the Home Affordable Modification Program. (See Ex. S).

26       109.   Pursuant to this Trial Plan Agreement, Plaintiff was to remit the sum of

27   $620.14 to Chase on or before May 1, 2010, June 1, 2010 and July 1, 2010.

28

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

110.   After these initial payments were successfully made, Chase instructed Plaintiff to continue to make the same payments on or before the first of each month, promising that his loan would soon be permanently modified.

111.   Plaintiff made all his TPP payments in a timely manner, and Chase accepted (and negotiated) these payments without qualification or protest of any kind.

112.   In October 2010, Plaintiff was verbally told by a customer service representative employed by and an agent of Chase that his TPP has been terminated, and that he had been rejected for a permanent loan modification. To date, Plaintiff has not received any written confirmation to this effect from Chase.

113.   On or about October 20, 2010, Plaintiff received a Notice of Breach and Default and of Election to Cause Sale of Real Property under Deed of Trust. (See Ex. T).

114.   Plaintiff complied with every request made of him by Chase and also fully complied with all other terms and requirements of the TPP Agreement.

115.   Despite Plaintiff's full compliance in all respects with the terms of the TPP Agreement, Chase failed to send him a modification agreement for his signature or otherwise extend him an offer for a permanent modification.

116.   As of the filing of this Second Amended Complaint, Chase has not extended to Plaintiff an offer for a permanent modification. To the contrary, Chase has restarted its foreclosure activities despite the fact that Plaintiff was entitled to a permanent modification in July 2010 after making the payments required under the TPP Agreement.

**Anthony G. Taylor**

117.   In 1994, Plaintiff obtained a mortgage loan for his personal residence located in Lafayette, Indiana. At all times relevant hereto, Plaintiff's mortgage loan was held by Defendant Chase.

118.   In 2009, Plaintiff began falling behind in his mortgage payments. At that

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

1   time, Chase informed him that he would be considered for some sort of loan
2   modification.

3      119.   On or about August 20, 2009, Chase offered Plaintiff a Trial Period Plan
4   ("TPP"). (See Ex. U).

5      120.   On September 3, 2009, Plaintiff accepted Chase's offer and entered into a
6   TPP Agreement. (See Ex. V).

7      121.   Pursuant to this Trial Plan Agreement, Plaintiff was to remit the sum of
8   $372.00 to Chase for three (3) months.

9      122.   After these initial payments were successfully made, Chase instructed
10  Plaintiff to continue to make the same monthly payments, promising that his loan
11  would soon be permanently modified.

12     123.   Plaintiff made all his TPP payments in a timely manner, and Chase
13  accepted (and negotiated) these payments without qualification or protest of any kind.

14     124.   On or about October 3, 2009, Plaintiff received a letter from Chase
15  acknowledging that he was in a TPP and thanking him for participating in the Making
16  Home Affordable Loan Modification program. (See Ex. W).

17     125.   Although Plaintiff sent Chase all the documentation requested in the TPP
18  offer (at the same time he mailed Chase his first TPP payment), the October 3rd letter
19  requested that Plaintiff send the documents to Chase a second time. (See Ex. W).

20     126.   On or about October 19, 2009, Plaintiff mailed Chase a letter and all the
21  documents requested by Chase in the October 3rd letter. (See Ex. X).

22     127.   On or about December 3, 2009, Chase again sent Plaintiff a letter
23  requesting documentation that Plaintiff had already mailed to Chase. (See Ex. Y).

24     128.   On or about December 11, 2009, Chase wrote to Plaintiff for a third time
25  requesting documentation that Plaintiff had mailed to Chase on September 3, 2009 and
26  again on October 21, 2009. (See Ex. Z).

27     129.   On December 22, 2009, Plaintiff responded to Chase's December 3rd and
28

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

1  December 11th letters. Said response was sent to Chase via Federal Express mail and
2  facsimile. (See Ex. AA).

3      130.   On or about January 14, 2010, Plaintiff received a letter from Chase in
4  which Chase finally acknowledged that it had received the documentation requested,
5  and that it was reviewing Plaintiff's account. (See Ex. BB).

6      131.   On or about May 5, 2010, Plaintiff received a letter denying him a
7  permanent modification (See Ex. CC).

8      132.   Despite the fact that Chase sent Plaintiff a letter on January 14th
9  acknowledging that it had received all necessary documentation and a letter on May 5th
10 denying him a permanent modification, Chase sent Plaintiff a letter on or about June 3,
11 2010 stating that it needed additional documentation from Plaintiff to complete his
12 request for a modification. (See Ex. DD).

13     133.   Plaintiff complied with every request made of him by Chase and also fully
14 complied with all other terms and requirements of the TPP Agreement.

15     134.   Despite Plaintiff's full compliance in all respects with the terms of the TPP
16 Agreement, Chase failed to send him a modification agreement for his signature or
17 otherwise extend him an offer for a permanent modification.

18     135.   As of the filing of this Second Amended Complaint, Chase has not
19 extended to Plaintiff an offer for a permanent modification. To the contrary, Chase has
20 restarted its foreclosure activities and has done nothing but offer to reevaluate Plaintiff
21 and possibly put him in line for another modification despite the fact that Plaintiff was
22 entitled to a permanent modification in November 2009 after making the payments
23 required under the TPP Agreement.

24              **CLASS ACTION ALLEGATIONS**

25     136.   Plaintiffs repeat and re-allege every allegation above as if set forth herein
26 in full.

27

28                  Second Amended Class Action Complaint
                         10-cv-01464-DOC(JCGx)

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

137.   This class action is brought by Plaintiffs on behalf of a **Nationwide Class**
defined as follows:

All homeowners nationwide who have complied with their obligations
under a written TPP Agreement, but were nonetheless denied a permanent loan
modification and who as a result paid additional monies to Chase or incurred additional
costs that they should not have had to pay.

138.   **California Subclass:** All homeowners in California who have complied
with their obligations under a written TPP Agreement, but were nonetheless denied a
permanent loan modification and who as a result paid additional monies to Chase or
incurred additional costs that they should not have had to pay.

139.   **Illinois Subclass:** All homeowners in Illinois who have complied with
their obligations under a written TPP Agreement, but were nonetheless denied a
permanent loan modification and who as a result paid additional monies to Chase or
incurred additional costs that they should not have had to pay.

140.   **New York Subclass:** All homeowners in New York who have complied
with their obligations under a written TPP Agreement, but were nonetheless denied a
permanent loan modification and who as a result paid additional monies to Chase or
incurred additional costs that they should not have had to pay.

141.   **Nevada Subclass:** All homeowners in Nevada who have complied with
their obligations under a written TPP Agreement, but were nonetheless denied a
permanent loan modification and who as a result paid additional monies to Chase or
incurred additional costs that they should not have had to pay.

142.   Excluded from the Class are 1) any Judge or Magistrate presiding over this
action and members of their families; 2) Defendant, Defendant's subsidiaries, parent
companies, successors, predecessors, and any entity in which Defendant or its parent
companies have a controlling interest and their current or former officers and directors;
3) persons who properly execute and file a timely request for exclusion from the Class

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

or Subclass; and 4) the legal representatives, successors or assigns of any such excluded persons. Plaintiffs anticipate that amending the Class and Subclass definition may become proper following discovery.

143.   Plaintiffs sue on their own behalf and on behalf of the above-defined Class under Rules 23(a) and (b) of the Federal Rules of Civil Procedure.

144.   Plaintiffs do not know the exact size or identities of the members of the proposed Class, since such information is in the exclusive control of Defendant. Plaintiffs believe that the class encompasses hundreds of individuals whose identities can be readily determined from Defendant's books and records. Therefore, the proposed class is so numerous that joinder of all members is impracticable.

145.   Based on the size of the modifications at issue, Plaintiffs believe the amount in controversy exceeds $5 million.

146.   All members of the Class have been subject to and affected by the same conduct. The claims are based on form contracts and uniform loan modification processing requirements. There are questions of law and fact that are common to the Class that are subject to common proof and predominate over any questions affecting only individual members of the Class. These questions include, but are not limited to the following:

    a.    Whether Chase's TPP Agreements required Chase to extend modification agreements or otherwise offer permanent loan modifications when its borrowers complied with their requirements under the TPP Agreements;

    b.    Whether Chase breached an express term of its TPP Agreements with Plaintiffs and the Class members by failing to timely extend offers for permanent modification to Plaintiffs and the Class members;

    c.    Whether Chase breached an implied term of its TPP Agreements by failing to timely extend offers for permanent modification to Plaintiffs and the Class members;